Diamond T. Motor Car Company, Appellant, *v.* Patterson et al.

306

Argued April 17, 1929.

Before TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*F. Clair Ross,* and with him *Ben J. Lubic* and *Brandon & Brandon,* for appellant.

*William D. Markel,* and with him *Zeno F. Henninger,* for appellee.

OPINION BY KELLER, J., July 2, 1929:

At the time the attachment execution in this case was served on the garnishee it owed the defendant $110.25, which was due him for hauling gravel with his truck. The question involved in this appeal is whether this money was exempt from attachment, under sec-

tion 5 of the Act of April 15, 1845, P. L. 459, providing: "That the wages of any laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer."

The defendant was not a contractor employing other men. He drove his own truck, hauling gravel for the garnishee in its road construction, and worked forty-one and a half hours, for which it had agreed to pay him three dollars per hour. Fourteen dollars and twenty-five cents was credited on the account for gasoline and oil which the garnishee had furnished defendant in connection with the work.

The court below held that the defendant came within the proviso of the Act of 1845, supra, and quashed the attachment. Plaintiff appeals.

Plaintiff concedes that defendant was a laborer within the contemplation of the proviso of the Act of 1845, but contends that the term 'wages of any laborers,' as used in the act does not cover the full $3 per hour due the defendant, but only so much thereof as would be fair compensation to him for his labor apart from the use of his truck, and fixes this at fifty cents per hour. But that was not the way defendant was employed. He was to be paid a gross amount, $3 per hour, to haul gravel in his truck, not fifty cents an hour for his labor, and two dollars and a half an hour for the use of his truck. The employment contemplated the use by him of his truck as an implement or instrumentality incidental and necessary to the performance of his labor.

While the point has not been squarely ruled in this State we think the decisions incline toward the view of the learned court below.

In Heebner v. Chave, 5 Pa. 115, where the defendant in the attachment contracted with the Borough of Norristown to grade and excavate a street in the borough for twenty cents a cubic yard, and used on the

work two carts, two or three horses, and enough of hands, with himself, to keep these in exercise, it was held that he was entitled to have exempted from the attachment the wages earned by himself and his family, under his direction, but not for hands employed by him as a contractor on the work. He was not paid by the hour or day for the use of a team, but by the cubic yard excavated, and nothing was said in the opinion as to how the wages due him were to be calculated, and whether or not it was to include provision for the use of his team; but in Wentroth's App., 82 Pa. 469, a case dealing with the Act of April 9, 1872, P. L. 47, the court intimated that if Snyder had been employed to haul lumber with his own team he would have been a 'laborer' within the terms of that act as to the hauling done by him with his own team, but was not, because he only hired other men to haul for him with their teams, and was therefore a contractor. The distinction is maintained in Smith v. Brooke, 49 Pa. 147, 150. In Penna. Coal Co. v. Costello, 33 Pa. 241, it was held that the wages of a miner, who by his own labor mined coal at a certain price per ton, out of which he paid a common laborer so much per day to assist him, were not attachable under the Act of 1845, supra. A similar ruling was made in Daniel Seiders' App., 46 Pa. 57.

In Millheim's App., 1 Pa. Superior Ct. 367, a contract had been made by a saw mill operator with Millheim for cutting, skidding and hauling logs at so much per thousand, and the latter employed other men to work with and haul for him. The lower court held that these employees were entitled to preferred claims as laborers under the Act of May 7, 1891, P. L. 44; but denied such preference to Millheim. This court reversed and held that the balance remaining out of what was due Millheim, after payment of the men employed by him, should be awarded him to cover his own

*labor and that of his team.* In Carey v. Lameroux, 22 Pa. Superior Ct. 560, this court referred approvingly to Millheim's App., saying: "We held that the contractors who had done work personally upon the job were entitled, after their laborers had been paid, to the balance which represented *their own work and that of their teams.*" In Com. to use v. Gibson, 67 Pa. Superior Ct. 373, this court, without expressly so deciding, practically assumed that the amount due the defendant Gibson, for his services with his team, $100 per month, represented the 'wages of a laborer.' In Yoder's Case, 127 Fed. 894, the late Judge JOHN B. McPHERSON held that a man who owned a team, wagon and plow with which he worked by the day at whatever manual labor he could get to do was a wage earner and not a contractor, and classed his horses, wagon and plow in the same category as the tools or implements of a carpenter or other skilled mechanic.

The question has been squarely raised, and ruled in accordance with the view of the lower court, in other jurisdictions.

In Martin v. Wakefield, 42 Minn. 176, 43 N. W. 966, a statute giving a lien to any person who shall perform any manual labor in cutting, banking, driving, etc., any logs or timber, was held to apply to a man who was employed with his team, at a gross price for both, to haul and bank logs. The court said: " 'Manual labor' as used in this connection includes the use and earnings of all implements, instrumentalities or agencies, such as axe, cant-hook, team or the like, which are actually used in and necessary to the performance of such labor by the lumberman or logger."

In Hale v. Brown, 59 N. H. 551, it was held that the 'personal services' of a lumberman, for which under a similar statute he is entitled to a lien on the lumber cut and hauled by him, include the use and earnings of his own oxen, chain, cant-hook, and his

own team and sled, if these are actually used by him and are essential to the service rendered (p. 558); but that the term does not apply to contractors employing men to cut and haul timber, who do no manual labor themselves and derive their compensation from the profits realized (p. 559).

We are in substantial accord with the following extract from the opinion of the court below: "A careful consideration of the question has led us to the conclusion that what the laborer earns by his own labor and the use of his own truck is wages, exempt under the said act. Were we to hold otherwise it would be hard to determine where the services of a laborer ended and those of the truck began. The laborer who labors with his own tools would be subject to the same division, whether it be hammer, wheelbarrow or push cart. A wagon and team, or a truck, is just as much an implement and instrumentality through which the laborer acts as is the hammer, wheelbarrow or push cart. The fact that they are of greater value does not change the principle. The truck itself is not exempt from execution but we think that the defendant's earnings come within the clear intendment of the act and are, notwithstanding they represent the activities of the defendant and his truck."

The order is affirmed.