The question is whether a certain purchasing agent was anemployee of plaintiffs within the meaning of a "blanket position bond" which defendant had issued to them. The bond agreed to indemnify them against any loss of money or other property through theft or embezzlement committed by any of their employees.
On May 12, 1947, one Edward J. Van Tassell was engaged by plaintiffs to buy and sell automobiles on their behalf, they being dealers in used cars. On May 27, 1947, he received from them the sum of $3,100 for the purpose of purchasing certain automobiles; of this amount he returned the sum of $450 but fraudulently withheld and embezzled the balance, $2,650, which he converted to his own use. Plaintiffs brought the present suit against the bonding company to recover that amount. Defendant claimed that Van Tassell was not an employee of plaintiffs within the meaning of the bond but an independent contractor.
One of the plaintiffs testified at the trial as follows: "I employed Mr. Van Tassell as a buyer of cars. He was to receive $50 commission on each car I directed him to buy. He was to work from 9:00 o'clock in the morning until 6:00 o'clock at night, and I directed him to go within an area or radius of 150 miles, to locate and inspect cars. He was to call me on the telephone, reverse the charges, describe the condition of the car, and the price that he elected, and I would then advise him to come to the office where I would give him the money for the car and he would go and bring the car in. . . . At the end of each day's work, he was to call me on the telephone, or report in person if he was close to the office, and tell me his day's activities. At that time I could then direct him where to go the following day to conduct the following day's work." Van Tassell paid for *Page 486 
his own meals, hotel bills, oil and gasoline, and for the upkeep of his car. In addition to purchasing automobiles he was also to receive $25 commission for any that he sold.
The legal distinction between an employee and an independent contractor is so well established as to require little if any discussion. The characteristic of the former relationship is that the master not only controls the result of the work but has the right to direct the way in which it shall be done, whereas the characteristic of the latter is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result:McColligan v. Pennsylvania R. R. Co., 214 Pa. 229, 232,63 A. 792, 793; Eckert v. Merchants Shipbuilding Corp., 280 Pa. 340,348, 349, 124 A. 477, 480, 481; Campagna v. Ziskind, 287 Pa. 403,407, 135 A. 124, 125, 126; Walters v. Kaufmann DepartmentStores, Inc., 334 Pa. 233, 235, 5 A.2d 559, 560; Joseph v.United Workers Association, 343 Pa. 636, 638, 639, 23 A.2d 470,472. "Broadly stated, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor. . . . It is not . . . the fact of actual interference or exercise of control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor": 27 Am. Jur. pp. 486, 487. It is the exclusive function of the jury to determine, under the evidence, the precise nature of the relationship, except where the facts are not in dispute, in which latter event the question becomes one for determination by the court: Joseph v. United WorkersAssociation, 343 Pa. 636, 639, 23 A.2d 470, 472, 473. In deciding whether one acting for another is a servant or an independent contractor the fact that his compensation is on a commission *Page 487 
basis instead of in the form of wages is not a material factor:Blum Unemployment Compensation Case, 163 Pa. Super. 271,276, 60 A.2d 568, 570; Singer Manufacturing Co. v. Rahn,132 U.S. 518, 523; 27 Am. Jur. pp. 494, 495. On the other hand, an extremely important consideration is the power of the master to terminate the relationship at any time with or without cause, since that tends strongly to show that the person employed is not an independent contractor but a servant: 27 Am. Jur. p. 501; Dickson v. Hollister, 123 Pa. 421, 430, 16 A. 484, 487;American Writing Machine Co. v. Unemployment Compensation Boardof Review, 148 Pa. Super. 299, 304, 25 A.2d 85, 87; BlumUnemployment Compensation Case, 163 Pa. Super. 271, 276,60 A.2d 568, 570; Singer Manufacturing Co. v. Rahn,132 U.S. 518, 523.
It would seem clear, when these principles are applied to the evidence in the present case, that Van Tassell was plaintiffs' employee. And if, instead of using the legal standards thus prescribed for the determination of the question, we turn to the provisions of the bond itself, the same result inevitably follows.
Paragraph 2 of the bond defines the term "employees" to mean persons who "are in the regular service of the Insured in the ordinary course of the Insured's business, and who are compensated by salary, wages, and/or commissions, and whom the Insured has the right to govern and direct at all times in the performance of such service, . . . but not to mean brokers, factors, commission merchants, consignees, contractors, or other agents or representatives of the same general character." VanTassell was in "the regular service of the Insured in the ordinary course of the Insured's business" since he worked steadily day by day and solely for the plaintiffs in their business as used car dealers. *Page 488 
Plaintiffs had "the right to govern and direct [him] at all times in the performance of [his] service" since they directed the places where he was to work and he had to keep in touch with them continually, seeking where used cars could be bought, informing plaintiffs in regard thereto, reporting to them at the end of each day's work as to that day's activities, and receiving instructions from them as to his work for the following day; he could not make any purchases or sales unless the price was acceptable to them and only if they approved. He was clearly not a broker, nor a factor, nor a commission merchant, nor a consignee, nor a contractor, nor an agent or representative "of the same general character". He thus came wholly within the express terms of the bond itself.
A case strikingly similar to the present is Magarian v.Southern Fruit Distributors, 146 Fla. 773, 1 So.2d 858. There the person whose status was in question had the duty of locating, inspecting and buying citrus fruit for a packing concern; he had no authority to use his independent judgment in determining whether or not he would buy any particular fruit, that decision remaining entirely with the employers; neither did the work require his entire time, but he was to go where the employers directed and do what they required; he received compensation on a percentage basis for all fruit which was bought through his services. Pointing out that the method of determining the amount of his compensation had no controlling effect in the case, that his services could have been terminated at any time with or without cause, and that the employment was in the business of the employer, the court held that he occupied the status of employee and not that of an independent contractor. *Page 489 
Defendant makes much of the fact that plaintiffs filed no reports, as far as Van Tassell was concerned, of social security, federal income, or city wage taxes, nor made any deductions of such taxes from his compensation; it is urged that this indicates that plaintiffs did not regard him as being their employee. To this contention it may be answered, in the first place, that the determining factor is not the way in which plaintiffs or Van Tassell may have regarded their relationship but what it really was under the facts and the applicable rules of law: see Magarian v. Southern FruitDistributors, 146 Fla. 773, 778, 1 So.2d 858, 861; 27 Am. Jur. p. 503, § 23. Another answer is that the failure to file such reports and make such deductions was explained by one of the plaintiffs, who testified that Van Tassell was in their employ for a period of only two weeks during the middle of a month and that it was only at the end of each month that an accountant would prepare their records and provide for such deductions. This explanation was for the consideration of the jury, to whom the learned trial judge submitted it. A witness may always explain an apparent inconsistency in his position: Maculuso v.Humboldt Fire Insurance Co. of Pittsburgh, 271 Pa. 489,115 A. 828; Quartz v. Pittsburgh, 340 Pa. 277, 279, 16 A.2d 400, 401;Commonwealth v. Oyler, 130 Pa. Super. 405, 409,197 A. 508, 509, 510.
The jury having found a verdict for plaintiffs, and no error in the record appearing, the court below properly denied defendant's motions for a new trial and for judgment n. o. v.
Judgment affirmed. *Page 490